## RAMIREZ vs. CITY OF CHEYENNE*
### (No. 1124; Dec. 15, 1925; 241 Pac. 710.)

MUNICIPAL CORPORATIONS—MAINTENANCE OF DEFECTIVE SWING ON PLAYGROUND—NO LIABILITY FOR NEGLIGENCE IN PERFORMANCE OF GOVERNMENTAL FUNCTIONS—LIABILITY FOR NEGLECT OF PERFORMANCE OF CORPORATE FUNCTIONS—REASONABLE CARE REQUIRED IN MAINTENANCE OF PLAYGROUND.

1. In action for death of child caused while playing in a swing on playground maintained by city, evidence that swing was in defective and dangerous condition, and that city knew of it, *held* for jury.
2. A child is required to exercise for his own protection that care that may fairly and reasonably be expected from children of his age.
3. In action for death of boy between seven and eight while playing in swing on city playground, which contained sign "For babies only," deceased *held* not conclusively contributorily negligent under the evidence.
4. Ordinarily, municipal corporations are not liable for negligence in the performance of governmental or public functions.
5. Ordinarily, municipal corporations are liable for the negligent performance of corporate or private functions.
6. In action for death of boy on swing in public playground, *held*, that city was required to use reasonable care in keeping and maintaining playground in a safe condition for the children invited thereon.

*See Headnotes (1) 28 Cyc. p. 1502 n. 35; p. 1507 n. 59 (2) 29 Cyc. p. 535 n. 51 (3) 28 Cyc. p. 1510 n. 71 (4) 28 Cyc. p. 1257 n. 6 (5) 28 Cyc. p. 1258 n. 8. (6) 28 Cyc. p. 1311 n. 22.

ERROR to District Court, Laramie County; WILLIAM A. RINER, Judge.

Action by Joseph M. Ramirez, as administrator of the estate of Clarence Ramirez, deceased, against the city of Cheyenne for the death of plaintiff's intestate, killed by the falling of a swing maintained in a public park. There was judgment for defendant on a directed verdict, and plaintiff brings error.

*Walton & Watts* for plaintiff in error.

Defendant maintained the playground in its private capacity, which the law distinguishes from governmental functions, such as maintaining order, punishing crime, collecting taxes and etc., every municipal corporation has a two-fold character, the one governmental, the other private; 19 R. C. L. pp. 697-698, 1129-1130; defendant is not authorized under its charter to operate parks or playgrounds; 1624 C. S.; Capp vs. City of St. Louis, 251 Mo. 345; it was required to exercise reasonable care in maintaining the playground and is liable in civil damages for injuries due to its neglect; City vs. Swain (Okla.) 142 Pac. 1104; Canon City vs. Cox (Colo.) 133 Pac. 1040; Denver vs. Spencer, (Colo.) 82 Pac. 590; Denver vs. Dunsmore (Colo.) 3 Pac. 705; City of Indianapolis vs. Baker, 125 N. E. 52; Gushee vs. City of N. Y. 58 N. Y. Supp. 967-970; People vs. Board (Mich.) 15 Am. Rep. 202-208; State vs. Edwards, (Mont.) 111 Pac. 734; Oliver vs. Worcester, (Mass.) 3 Am. Rep. 485; the law of attractive nuisances is fully discussed in R. R. Co. vs. Stout, 17 Wall (U. S.) 657; U. P. Ry. Co. vs. McDonald 152 U. S. 262; Lowe vs. Salt Lake City (Utah) 57 A. S. R. 708; Lyttle vs. Harlan Coal Co. 167 Ky. 345; Doyle vs. Chattanooga, 128 Tenn. 433; the evidence established the city's ownership of the park and swing in question and that its condition was defective and unsafe, and had been so for some time prior to the accident. The child suffered a

fracture of the skull by the falling of the swing; defendant had knowledge of the defective condition of the swing. Children under the age of 7 years cannot be guilty of contributory negligence; 29 Cyc. 540; Tucker vs. Cotton Mills, 76 S. C. 539; Lorence vs. Ellensburg, 13 Wash. 341; Westbrook vs. Mobile R. R. Co. (Miss.) 14 A. S. R. 587; and cases cited; Price vs. Water Co. (Kans.) 52 Am. St. R. 625; the court erred in directing a verdict for defendant.

*T. Paul Wilcox, Sam M. Thompson* and *R. N. Matson* for defendant in error.

A municipal corporation maintaining a public park is not liable for negligence, such maintenance being the performance of a governmental function; a city acts within its public governmental capacity in performing services for the promotion of public health, morals, education and welfare, but a city cannot be coerced to provide parks; People vs. Detroit, 28 Mich. 228; State vs. Edwards, (Mont.) 111 Pac. 734; the principle urged by plaintiff does not apply in the present case; the terms "private" and "public" as applied to the functions of a municipality have various connotations in the law. For example the business of selling coal is of a public nature; Jones vs. Portland (1919) 245 U. S. 217; the functions of a town may be governmental for some purposes and of a private character in others; Heino vs. Grand Rapids, 202 Mich. 363; Gushee vs. New York, 58 N. Y. 967; Commission Government provides for the superintendence of parks; 2085, 2086 C. S. and 1624, 1639 C. S. maintainance of parks unimposed by statute may nevertheless be a governmental function; Emmons vs. City of Va. (Minn.) 188 N. W. 561; White, Negligence of Municipal Corporations, Sec. 23; the Washington cases cited by defendant are not in harmony, but recognize the distinction resting in corporations conducted for gain; the Colorado decisions reveal their lack of soundness as authority; the maintenance of

a public park is a governmental function according to the clear weight of authority; Bjork vs. City of Tacoma, 35 Pac. 1105; McGraw vs. Dist. of Columbia, 3 App. D. C. 405; Blair vs. Granger, 24 R. I. 317; Park Coms. vs. Prinz, (Ky.) 105 S. W. 948; Bishing vs. Park (N. J. L.) 78 Atl. 196 Evans vs. Sheboygan, (Wis.) 141 N. W. 265; Harper vs. Topeka (Kans.) 139 Pac. 1018; Nashville vs. Burns (Tenn.) 174 S. W. 1111; Robbins vs. Omaha (Nebr.) 160 N. W. 749; Nelson vs. Spokane (Wash.) 176 Pac. 149; Gero vs. Coms. (Mass.) 122 N. E. 415; Kellar vs. Los Angeles (Calif) 178 Pac. 505; Nebr. City vs. Nebr. 186 N. W. 374; White on Negligence of Municipal Corporations, Sec. 101, p. 133; the leading case is that of Hill vs. Boston, 122 Mass. 344; Heino vs. Grand Rapids supra recognizes the principle that the maintenance of parks, playgrounds and other recreations for public health and education are a public function; see also Sherman & Redfield (6th ed.) Vol. II, Section 267; McQuillan, Municipal Corporations, Sec. 2675; White Negligence of Municipal Corps Sec. 99; the turntable or attractive nuisance cases cited in plaintiff's brief have been criticised by many courts of high standing in this country; the doctrine does not apply in the present case, for the reason that the defendant was acting within its governmental capacity; it is true that children of tender age have been held to be incapable of contributory negligence, but the great weight of authority requires a child to use a degree of care, which an ordinary child of the same age, experience and intelligence would be expected to use, and where it appears from uncontradicted evidence that the infant did not use that degree of care, he is guilty of contributory negligence as a matter of law; Dietrich vs. Baltimore, 58 Md. 347; Anderson vs. Co. 161 Mo. 411; Virginia R. R. Co. vs. Clawsen, 111 Va. 313; Bess vs. Santa Fe R. (Kans.) 62 Pac. 996; Fitzhenry vs. Traction Co. (N. J.) 46 Atl. 698; Ryan vs. LaCross City R. (Wis.) 83 N. W. 770; Lafferty

vs. Third Ave. R. 176 N. Y. 590; deceased was a healthy, normal boy aged 8 years and shown by the evidence to be intelligent, and able to go about and take care of himself, frequenting the Library for books, and in fact some of his books were found in a larger swing near by; he was standing up in a swing plainly marked "for babies only" and swinging so high that he raised the rods of the swing from the ground; it is clear that he did not exercise that degree of care expected of one of his age and intelligence. A city acting in its governmental capacity is not liable for negligent performance of its governmental functions when a licensee is involved.

Kimball, Justice.

This is an action for damages for the death of plaintiff's intestate, a boy between 7 and 8 years of age, who was killed by the falling of a swing maintained by the defendant in a public park. The defendant, the City of Cheyenne, is a Municipal Corporation existing under special charter and operating under the commission form of government. The trial was terminated at the close of plaintiff's case in chief by a directed verdict for the defendant, and the plaintiff brings the case here by proceeding in error.

The petition charges that the child's death was caused by the negligence of the defendant in maintaining the swing in a defective and dangerous condition. The evidence showed that the swing was supported by four iron legs. Four corresponding iron pipes were set in cement in the ground. These pipes were meant to serve as sockets into which the supporting legs of the swing could be fitted and fastened. As originally set up and maintained the swing was securely anchored to the ground in this manner, and there was then no danger of its falling. Some time before the accident the pipes to which the legs of the swing should have been fastened became broken or worn and unfit for use for the purpose for which they were

meant. There was then no way to anchor the swing to the ground. For a month or more before the accident the swing in this condition was permitted to be in the park and to be used by children of various ages. The jury might have found from the evidence that the swing in that condition was a dangerous machine likely to cause injury to children who used it, and that the defendant knew of the condition and danger. The swing had fallen at least once and would have fallen at other times had it not been held up or caught by older persons who happened to be present.

The jury might have found also that the defective condition of the swing was the proximate cause of the death of the child. It is claimed that the child was guilty of contributory negligence, and that the directed verdict may be upheld on that ground. The facts which the defendant claims are undisputed and on which it relies to establish negligence on the part of the child are substantially these: The swing was intended for use by babies or children of tender years, and had on it a sign "for babies only." At the time of the accident, the child was swinging vigorously and standing in the seat of the swing. He was a normal, healthy, intelligent child, and could have seen, as anyone else could, that the legs of the swing were not fastened to the ground.

The law requires a child to exercise for his own protection that care that may fairly and reasonably be expected from children of his age. In cases of children of the age of the deceased the question whether that care has been exercised is usually a question of fact to be left to the jury. Shearman & Redfield on Neg. (6th ed.) Sec. 73a. We believe the question should have been left to the jury in this case. If we assume that the sign "for babies only" meant that the swing should not be used by children of the age of the deceased, it is hardly to be contended that it necessarily gave notice of the defective condition of the

swing or of the danger attending its use. And if we assume that the child should have noticed that the legs of the swing were not fastened to the ground, we do not think it follows as a necessary inference that a child of his age should have appreciated the danger of using the swing in the manner he did use it. The very presence of the swing in a public park or playground would naturally lead even a much older person to believe that it was fit for use. Cases are cited in which it has been held as a matter of law that the injured child was guilty of contributory negligence, but we think none of them would support the directed verdict on that ground in this case. In most of them the child suddenly put himself in a dangerous place where there was no reason to expect him, and too late for the danger to be averted. In all of them it appeared from undisputed facts that the child acted in entire disregard of that degree of prudence that was reasonably to be expected from one of his age. We cannot say that this was such a case.

While the record does not disclose it, it is reasonably certain that the trial judge did not direct the verdict on the ground of contributory negligence, but in approval of the contention that the defendant was not liable for its negligence. This presents the important question in the case.

There is an oft-repeated general principle that a municipal corporation has powers of two kinds, first, those that are governmental or public, in the performance of which there is no implied common law liability for negligence, and, second, those that are corporate or private for the negligent performance of which the city is subject to the same liability as individuals or business corporations. This division of the powers of municipal corporations for the purpose of determining their tort liability is recognized by most of the courts of this country, but has never received more than incidental notice by this court.

The cases on which it is supposed to be based underwent a thorough examination by Mr. Chief Justice Gray, in 1877, in the case of Hill v. Boston, 122 Mass. 344, where it was said at page 369: (23 Am. Rep. 332):

"The result of the English authorities is, that when a duty is imposed upon a municipal corporation for the benefit of the public, without any consideration or emolument received by the corporation, it is only where the duty is a new one, and is such as is ordinarily performed by trading corporations, that an intention to give a private action for a neglect in its performance is to be presumed."

Of this opinion Judge Dillon in his work on Municipal Corporations (5th ed., Sec. 1643) remarks:

"That this general view of the restricted liability of municipal corporations is sound there can be little doubt."

It seems, however, in spite of the high authority of Hill v. Boston, and the many other cases in this country to the same effect, that the exemption of municipal corporations from liability for affirmative acts of negligence finds little or no support in English precedents. The cases in that country, following Russell v. Men of Devon, 2 T. R. 667, make a rather unscientific and bothersome distinction between nonfeasance and misfeasance, and in the absence of a statute imposing liability, public bodies performing public acts from which they derive no revenue are exempt from liability in cases of nonfeasance only. Cowley v. Newmarket Local Board, (1892) A. C. 345; Shoreditch v. Bull, 90 L. T. (N. S.) 210; Maguire v. Liverpool Corp. (1905) 1 K. B. 767; McClelland v. Manchester Corp. (1912) 1 K. B. 118; 14 Juridical Rev. 158; 30 Law Q. Rev. 276, 415. It is said in Pollock on Torts (12th ed., pp. 59-60), on authority of Mersey Docks Trustees v. Gibbs, L. R. 1 H. L. 93, that:

"Where bodies of persons, incorporated or not, are intrusted with the management and maintenance of works, or the performance of other duties of a public nature, they are in their corporate or quasi-corporate capacity responsible for the proper conduct of their undertakings no less than if they were private owners; and this whether they derive any profit from the undertaking or not."

It has been assumed in England, however, that a municipal corporation would not be liable for misfeasance of its police officers, and this has been supposed to be so because the police perform public duties having no peculiar local characteristics. Wills, J., in Stanbury v. Exeter Corp., (1905) 2 K. B. 838, 842. This is something like the American doctrine.

The rule distinguishing between governmental and private powers for the purpose of determining the tort liability of municipal corporations may be of doubtful origin, and hard to justify on any of the principles of the law of agency and torts. The grounds for the distinction have been seriously challenged in recent years. The Supreme Court of the United States refused to apply it in a case under maritime law. Workman v. New York, 179 U. S. 552; 21 S. Ct. 212, 45 L. ed. 314. Relying largely on what was said in the majority opinion in Workman v. New York, the Supreme Court of Ohio in Fowler v. Cleveland, 100 Oh. St. 158, 126 N. E. 72; 9 A. L. R. 131, held a city liable for an injury caused by the negligent operation of a fire truck although it is held almost without dissent, and had been held in Ohio, that the maintenance of a fire department is a governmental matter. Since the decision of Fowler v. Cleveland there has been in legal periodicals a flood of adverse criticism of the rule of immunity. 34 Harv. L. R. 66; 34 Yale L. J. 1, 129, 229; 4 Ill. L. Q. 28; 33 Mich. L. R. 325; 20 Columbia L. R. 772. While these criticisms may have raised a serious doubt both as to the wisdom and the foundations of the rule, the doubt has not

found much expression in judicial decisions. After the decision of Fowler v. Cleveland, the case of Workman v. New York was expressly limited in its application to cases under maritime law, and the distinction between .public and private powers of the District of Columbia recognized. Harris v. District of Columbia, 256 U. S. 650, 41 S. Ct. 610. Later, Fowler v. Cleveland was overruled. Aldrich v. Youngstown, 106 Oh. St. 342, 140 N. E. 164; 27 A. L. R. 1497.

While we are not unmindul of the force of the criticisms of this rule of immunity, we think the rule has become so well fixed as a part of the law of municipal corporations of this country that it is not to be disregarded by the courts until the legislature declares a different policy.

A practical objection to the rule is the astonishing lack of uniformity in the decisions of cases in which it has been applied. Powers held to be governmental or public in one jurisdiction are held to be corporate or private in another, and it has often been said that it is impossible to state a rule sufficiently exact to be of much practical value in deciding when a power is public and when private. Dillon, supra, Sec. 1625; Johnson v. Chicago, 258 Ill. 494, 101 N. E. 960; Lloyd v. New York, 5 N. Y. 369, 55 Am. Dec. 347. The conflict in the decisions is no where more pronounced than in cases of negligence in the maintenance of public parks and playgrounds which are generally conceded to stand on the same footing. These cases are collected in a note to Emmons v. Virginia, 152 Minn. 295, 188 N. W. 561, as reported in 29 A. L. R. 860, where it is said that a majority of the cases support the view that a municipality in maintaining a public park is engaged in a governmental activity. There are, however, so many courts holding to the minority view that the mere question of the number of decisions one way or the other can have but little weight. From an examination of the more recent cases we find Utah holding to the rule of immunity and

West Virginia to that of liability. Alder v. Salt Lake City, 64 Utah 568, 231 Pac. 1102; Warden v. City of Grafton, (W. Va.) 128 S. W. 375. It would almost seem that the rule of immunity has been given or refused application to attain the result that has appeared to individual judges to be most convenient. However unsatisfactory this may be to those who wish for consistency in the law, it is recognized as the method by which many principles of the common law have been established. Holmes, Common Law, p. 1. That the law as applied to a particular situation produces different results in different jurisdictions is, to say the least, unsatisfactory. We cannot but hope that the legislature may turn its attention to the subject of municipal liability for tort and declare a policy for future guidance.

If, in declaring the rule to control this case, we felt free to be guided solely by our intuitions of public policy, we might say, without more ado, that the city should or should not be liable under the facts that might have been found by the jury. We have said, however, that we cannot disregard the established rule that the courts of this country try to follow in determining the tort liability of municipal corporations. If the city in maintaining the playground device had been engaged in an activity which generally, or by the clear weight of authority, has been classed either as governmental or private, we probably would be content to decide the case without looking for other grounds for the decision. In classifying the activity here involved and determining a policy of liability or immunity, we think, in the absence of any generally accepted guide, we should take note of some exceptions to the rule of immunity, and give consideration to some other matters that should influence public policy.

The most pronounced exception is in cases of failure
to keep highways in repair. The maintenance of high-
ways would seem to be a governmental or public function,
and is usually so recognized, but most of the courts of
this country, on one ground or another, have held cities
liable for negligence in failing to keep their streets in
a safe condition for travel. While such liability is some-
times declared by statute, it is often imposed in the ab-
sence of statute, and in the latter class of cases the right
to damages is usually sustained as an exception to the
general rule that exempts the city from liability for negli-
gence in the performance of governmental or public
duties. In cases of parks and playgrounds, some of the
courts holding the city liable do so for the same reasons
that apply to cases of highways. Other courts refuse to
extend the exception as to streets to cases of parks and
playgrounds. In this state we have had no case involv-
ing the liability of a city for defects in highways. Kent
v. Cheyenne, 2 Wyo. 6, decided without opinion, involved
the question of the city's liability for permitting a nui-
sance in a street. It was held that there was no liability.
But the probable ground for that decision was the exemp-
tion of the city from liability for failure to enforce an
ordinance, or for failure to abate a nuisance which it had
not created.

It is often said that a city, even though acting in a
governmental capacity, cannot escape liability for creat-
ing or maintaining a nuisance. Wood on Nuisance (2nd
ed.) Sec. 748; Hughes v. City of Fond du Lac, 73 Wis.
380; 41 N. W. 407; City of Winona v. Botzet, 169 Fed.
321, 332; 94 C. C. A. 563; 23 L. R. A. (N. S.) 204; Miles
v. Worcester, 154 Mass. 511; 28 N. E. 676; 13 L. R. A. 841;
Chattanooga v. Dowling, 101 Tenn. 342, 47 S. W. 700.
This should not, perhaps, be classed as an exception to the
rule exempting a city from liability for negligence, for
common law negligence does not enter into cases of true

nuisance.   The liability of municipal corporations for damages for nuisance seems generally to be recognized where property has been injured, but not so often where the damage was to the person.   Yet the maintenance of a dangerous thing in a public place has been referred to as a nuisance.   Tarry v. Ashton, 1 Q. B. Div. 314.   In Maxwell v. City of Miami (Fla.), 100 So. 147; 87 Fla. 107; 33 A. L. R. 682, the reckless operation of fire trucks on the public streets was called a nuisance.   Machines that allure children into danger have often been termed "attractive nuisances."   It has been said that "nuisance" is a good word to beg a question with.   Its use in relation to acts that give rise to private actions for damages might well be confined to infringements of rights appurtenant to real property.   1 Street, Foundations of Legal Liability, pp. 211, 230.   In the case at bar the plaintiff did not sue on the theory that the swing in its defective condition was a nuisance, and it is unnecessary for us to say whether or not it might have been so classified.   We will say in passing, however, that it is not unlikely that if a city should persist in maintaining a playground device in a defective condition in a public place where it would be a danger to children who used it, some law might be found to compel the city to remove or repair it.

In New Jersey it is held that the exemption of municipal corporations from liability for negligence in performance of public duties does not extend to cases of active wrongdoing chargeable to the corporation.   Olesiewicz v. Camden (N. J. L.) 126 Atl. 317; Kehoe v. Rutherford, 74 N. J. L. 659; 65 A. 1046; 122 Am. St. Rep. 411; Doran v. Asbury Park, 91 N. J. L. 651, 104 S. 130.   In Hart v. Freeholders of Union, 57 N. J. L. 90, 29 A. 490, it is said that there is no reason arising out of public policy why a municipal corporation should be shielded from liability when a private injury arises from wrongful acts as distinguished from mere negligence.   We fear that the term

"active wrong-doing" is of doubtful meaning. The cases show, however, that the courts of New Jersey refuse to grant absolute immunity to municipal corporations in the exercise of governmental powers.

We have already referred to the so-called "turntable" or "attractive nuisance" cases. Under the doctrine of those cases the alluring machine, or other attraction, is considered an invitation to the child who then has the rights of an invitee, or, if not that, the allured child is considered a licensee and the dangerous machine a trap. Except for this doctrine the child in such cases would be a trespasser. There is, of course, no contention that the child in the case at bar was a trespasser, and there is no occasion to invoke the doctrine of the attractive nuisance cases to fix his status. We call attention to the doctrine as illustrating the policy of the law to find a way to pro-tect children from artificial perils.

When the policy of distinguishing between governmental and private functions of municipal corporations took root in the law the activities of public bodies were much more limited than they have since become. The leading case of Russell v. Men of Devon, 2 T. R. 667, involved a defective bridge, and it was held that the unincorporated inhabitants of the county could not be sued for damages caused by their failure to keep the bridge in repair. Other cases arose in which it appeared that the public body was obtaining revenue from the exercise of the power, or acting as a substitute for the ordinary business or trading corporation, and in such cases liability for negligence was imposed. Scott v. Manchester, 2 H. & N. 204; Mersey Docks Trustees v. Gibbs, L. R. 1 H. L. 93. It has since been assumed that all duties of municipal corporations are performed either as a substitute for the state and for the benefit of the public in general, or as a substitute for business corporations and for the benefit of the munici-pality. In the performance of the first class of duties the

city is immune as the state would be, and in the other it
is liable as a business corporation would be. Lately there
has come to be recognized a kind of service to which there
is attached neither the immunity of the state nor the lia-
bility of business corporations. This is the service ren-
dered by bodies administering public charities. To such
bodies the law as established in many jurisdictions, in-
cluding ours, grants a partial exemption from tort lia-
bility. The exemption, we understand, applies where the
charity is sought to be charged with the negligence of its
employees, but does not affect its liability for failure to
perform its personal, non-delegable duties, such as the
duty of using care in selecting its employees, and in keep-
ing its premises safe for invitees. Williams v. Union Pa-
cific R. Co., 20 Wyo. 392; 124 Pac. 505; Bishop Randall
Hospital v. Hartley, 24 Wyo. 408, 415; 160 Pac. 385; Union
Pacific R. Co. v. Artist, 60 Fed. 365; 23 L. R. A. 581;
Hewett v. Association, 73 N. H. 556, 565; 64 A. 190; 7 L. ·
R. A. (N. S.) 496; Hearns v. Waterbury Hospital, 66
Conn. 98; 33 A. 595; 31 L. R. A. 224; McInerney v. St.
Lukes Hospital, 122 Minn. 10; 141 N. W. 837; Bruce v.
Central M. E. Church, 147 Mich. 230; 110 N. W. 951;
Hordern v. Salvation Army, 199 N. Y. 233; 92 N. E. 626;
32 L. R. A. (N. S.) 62. A charitable institution is also
liable for damages caused by a nuisance. Love v. Nash-
ville etc. Inst., 146 Tenn. 550; 243 S. W. 304; 23 A. L. R.
887.

If the service that a municipal corporation undertakes
to perform for the benefit of the children of the commun-
ity partakes of the nature of services that would ordi-
narily be performed by charitable or eleemosynary insti-
tutions, and is such as would not ordinarily be performed
by the state or business corporations, we think public
policy requires for the protection of the children of the
state that the municipality be held to no less accountabil-
ity for its own negligence than would be the case if the

service were performed by a charity. That policy would seem to be consistent with the rule that grants a larger immunity when the city is considered as acting as a substitute for the state and imposes a larger liability when it is considered as acting as a substitute for a business corporation. The analogy between an institution conducting a public charity and a municipal corporation when engaged in a similar activity has been noted elsewhere. Fire Ins. Patrol v. Boyd, 120 Pa. 624, 15 A. 553, 1 L. R. A. 417; Scibilia v. Philadelphia, 279 (Pa.) 549, 124 Atl. 273, 32 A. L. R. 981. In the case last cited it is said that "a municipality is entitled to the benefit of the same rule of exemption that would apply to work of a similar kind when rendered by a public charity. In other words, it is the character of the service involved which must serve as the criterion to govern controversies such as the one at bar."

The maintenance of free municipal playgrounds is a comparatively new municipal activity, and one in which neither the states nor business corporations are likely to engage. Such playgrounds might be, and probably are in some instances, maintained by benevolent persons or by corporations formed for the purpose. We think, therefore, that the city in maintaining the playground device must be considered as acting as a substitute for a charitable or benevolent body performing a public service. In the absence of any policy of immunity declared by the legislature we cannot hold that it has intended to create irresponsible agencies for such a purpose. Cities inviting children to playgrounds where it maintains devices for their use in play must assume at least those duties and liabilities that would be assumed by a charity doing the same thing. Though it be not liable under the doctrine *respondeat superior* for the negligence of its servants, it is liable for negligence in the performance of its nondelegable duties, among which is the duty to use reason-

able care to make the place safe for children who are there by invitation. The controlling principle is stated in Cooley on Torts, p. 605, thus: (Where one) "expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to see that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

We think the child in this case was an invitee under the foregoing principle. See Davis v. Central Congregational Soc., 129 Mass. 367, 37 Am. Rep. 368. This duty to invitees goes beyond the common doctrine of responsibility for servants and is nondelegable. Pollock on Torts (12th ed.) p. 516; Herman v. Board of Education, 234 N. Y. 196; 137 N. E. 24; 24 A. L. R. 1065; Silverton v. Marriott, 61 L. T. (N. S.) 61; 6 Labatt, Master & Serv. Sec. 2500. The rule as to non-delegable duties applies to corporations, who can act only by its agents, as well as to natural persons. 4 Labatt, supra, Sec. 1485.

Under the foregoing principles the jury would have been warranted in finding that the death of the child was caused by actionable negligence on the part of the defendant without contributory negligence on the part of the child, and a verdict should not have been directed. The judgment will be reversed and the case remanded for a new trial.

POTTER, Ch. J., and BLUME, J., concur.