VILLALPANDO v. CITY OF CHEYENNE

(No. 2002; March 9, 1937; 65 Pac. (2d) 1109)

For the plaintiff and appellant, there was a brief by *Richard J. Jackson* and *Clyde Zachman* of Cheyenne and oral argument by *Mr. Jackson.*

302

For the defendant and respondent, there was a brief and oral argument by *H. B. Henderson, Jr.* of Cheyenne.

RINER, Justice.

The appellant, Mary Villalpando, as plaintiff in the district court of Laramie County, brought this action against the respondent, City of Cheyenne, a municipal corporation, as defendant, to recover damages for injuries suffered by her and alleged to have been caused by the negligence of its employees in driving a motor vehicle owned by said City, used for sprinkling its

streets and which collided with a truck in which she was then riding. The defendant filed both a motion to strike out a clause contained in one of the paragraphs of plaintiff's amended petition and also a general demurrer to that pleading, motion and demurrer being filed the same day. Thereafter, the district court heard arguments on said motion and ordered that it be sustained. Subsequently, but upon the same day, the court ruled upon the defendant's demurrer adversely to plaintiff's contentions thereon. Thereupon the plaintiff declined to plead further, and a judgment was entered against her, that she take nothing by her action and that her petition be dismissed. Saving her exceptions, she has brought the record here for review by direct appeal.

The accident which caused the alleged injuries to the plaintiff occurred on November 16, 1934, and Paragraph "5" of her amended petition sets forth the averments upon which arise the questions argued upon this appeal thus:

"That said motor vehicle of defendant was owned and operated by defendant and that on the 16th day of November, 1934, defendant, its agents, servants and employees were driving and operating said motor vehicle at the times and places hereinafter set out in sprinkling certain streets in Cheyenne, Wyoming, after which operation blading of said streets was carried on by the defendant, its agents, servants and employees; that defendant was thereupon engaged in a private or municipal capacity and not in a governmental capacity."

The motion aforesaid filed by the defendant, among other grounds, attacked the last sentence of the quoted paragraph as a conclusion. It is urged that the court erred in sustaining the motion because any defect in the pleading which could be reached by that method was waived through the defendant filing its general demurrer thereto. We think that the averment in ques-

tion is a conclusion of law, but we also think that by filing the demurrer, the defendant waived its motion, and consequently the district court committed a technical error in sustaining it. See Hanks v. Hanks, 27 Wyo. 65, 71, 191 Pac. 1077; 49 C. J. 754, Sec. 1065, and cases cited in Note 23; 49 C. J. 832, Sec. 1230, and cases cited in Note 84; Paramount Publix Corporation v. Boucher, 93 Mont. 340, 19 Pac. (2d) 223. Nevertheless, considering the views we hold relative to the court's action in sustaining the demurrer aforesaid and presently to be indicated, we cannot regard the fact that the motion was ruled upon adversely to the plaintiff to be prejudicial error.

This court in State v. Irvine, 14 Wyo. 318, 84 Pac. 90, in describing the averments to be regarded as admitted upon disposition of a demurrer to a pleading, has said that, "While a demurrer admits the truth of the material allegations of fact in the pleading demurred to, it does not admit arguments, legal conclusions or inferences not supported by the facts and circumstances therein set forth, nor the construction of statutes, nor facts that are immaterial or against common knowledge." See also 49 C. J. 438-440, Sec. 545, and cases cited in Notes 15 and 17. It follows, therefore, that although the pleader inserted in plaintiff's amended petition the conclusion that because the defendant's employees were operating the motor vehicle aforesaid in sprinkling certain streets of the defendant, the latter was "engaged in a private or municipal capacity and not in a governmental capacity," such allegation was not admitted when the City interposed its demurrer to the pleading. It will be noted, also, from the quoted paragraph above, that it is alleged that after the sprinkling operation was performed upon the streets they were "bladed," i. e., scraped by defendant's employees. It does not appear from the pleading just when after the sprinkling was

accomplished the blading was done, whether the same truck and employees were engaged in the blading work or whether there was any related connection between the operations of sprinkling the streets and blading them. It is, however, perfectly clear from the allegations of plaintiff's amended petition that on the date specified the defendant's employees were operating the motor vehicle aforesaid in sprinkling the city streets and that the accident happened while they were so doing.

The question is presented then, and this is the point particularly discussed by the parties on the hearing and in their briefs, whether a municipality is liable in damages when its employees are engaged in sprinkling its streets and they operate the vehicle used in performing that work so that by their negligence some one is injured. The plaintiff maintains that this operation was in the exercise by the City of a corporate or private function, with a consequent liability on the part of the City, while the defendant insists that it was governmental in character and hence not actionable.

Our attention is directed by the briefs and arguments herein to three of the previous decisions of this court: Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 Pac. 710, where it was held that the City, in maintaining a children's playground in a public park, was liable for injuries caused by a defective swing therein, it being considered that the City was "acting as a substitute for a charitable or benevolent body performing a public service," and consequently affected by the rules of law governing the same; Opitz v. Town of City of Newcastle, 35 Wyo. 358, 249 Pac. 799, where the town was held responsible for injuries due to the defective condition of one of its streets, a bridge over a creek having been negligently left out of repair and no barriers placed or warnings given against its condition; and White v. City of Casper, 35 Wyo. 371, 249 Pac. 562,

where it was determined that the City was not liable for damages caused by its employees, at the time responding to a fire alarm, in negligently driving a fire truck into plaintiff's automobile parked along the street which the fire truck was using.

In all of these cases the elementary rule is referred to that for negligence in performing city activities, governmental in character, no liability is incurred by the corporation, while the exercise of powers pertaining to the municipality's private or business capacity render it liable for negligence in executing them. The Ramirez and Opitz cases are not in their facts or law applied pertinent here. The Opitz case concedes that the rule holding a municipality responsible in damages for injuries caused by a defective thoroughfare is illogical perhaps, but points out that this rule has been so thoroughly and so long established by judicial precedent that it was felt the court should not depart from it. As said in Sibilia v. Philadelphia, 279 Pa. 549, 124 Atl. 273, 32 A. L. R. 981, "The explanation of the highway cases may more probably be found in historic reasons than in general rules, or by the process of legal or logical deduction therefrom." The White case, supra, reminds us that it is held generally with little dissent— and later cases have not apparently altered the correctness of the statement—that the maintenance of a fire department in a municipality is in the exercise by it of a governmental function. There the petition attacked by demurrer pleaded as one of the grounds for holding the City liable that it had immediately prior to the collision sprinkled the street where the accident occurred, rendering it wet, slippery and dangerous for several blocks, which the City's employees could have seen and avoided. But this court, holding that an allegation of this character supported no municipal liability, remarked: "There can be no question that the city had a perfect right to sprinkle its streets. That

is one of the functions of a municipality very commonly exercised, and of importance to the health and welfare of the citizens of the community."

The performance by the employees of a municipality of duties relating to the preservation of the public health and comfort are—apart from the statutory law —also generally held to be done in the exercise of governmental functions. 43 C. J. 971 and cases cited; 6 McQuillin Municipal Corporations 5407, Sec. 2625. In the particular applications of this principle, however, there is divergence among the authorities. For example the closely related municipal activities of cleaning streets and removal of garbage have been regarded diversely by different courts. It would appear, though, that the weight of authority rests with the view that the execution of such duties is the performance by the municipality of governmental functions which are designed to promote public health and comfort, and consequently the public corporation is not liable therefor in tort, when the negligence which is charged occurred in the course of carrying on such activities and no nuisance is thereby created. So the author of the note in 14 A. L. R. 1477, says:

"In the majority of jurisdictions the cleaning or sprinkling of streets or the removal of rubbish or garbage by a municipality is deemed to be a governmental function designed primarily to promote the public health and comfort, and the municipality is therefore not liable for the torts of employees to whom the performance of that function is delegated."

A careful survey of the later case law on the point does not lead to a different conclusion.

So far as the operation of sprinkling the streets by a municipality—the particular act involved in the instant case—is concerned, we think it very fairly may and should be considered as an exercise of a function whose principal object is the protection of the health

of the public, as well as one directly contributing in no small degree to its comfort. This is especially true in cities located on the mountainous plateaux of the Rocky Mountain Region, where the air is thin and extremely dry, the altitude high, heavy winds often prevail and excessively rapid changes of temperature affecting the soil, occur regularly at certain seasons of the year and occasionally in all seasons. Under such conditions it is common knowledge that dirt and dust are carried into the air in clouds from paved and un-paved streets alike. It is common knowledge, too, that during such periods the health conditions of every community affected thereby are materially lowered, and diseases of the respiratory organs, such as colds, bronchial trouble and pneumonia become increasingly prevalent. We think it cannot be successfully disputed either that it is common knowledge that the sprinkling of thoroughfares and keeping them clean, directly and in an appreciable degree, operates to remove from the air the germ laden, irritating dust and dirt and to hold it in its proper place under foot. With the adoption of the automobile, employing wheels revolving at high speed, tearing loose the soil on unpaved streets and picking up and throwing dirt and debris accumulated on those paved when they are not kept clean, the need and useful function of street sprinkling as a protection to the health and comfort of all who live and come within the borders of a municipality becomes increasingly apparent. The cases cited by counsel to aid us in reaching a proper conclusion here, and those we have noticed upon making search ourselves, very clearly indicate the weight of authority to be as stated in the note in 14 A. L. R., supra.

The only case mentioned by the plaintiff as reaching a contrary conclusion to that we are inclined to approve, regarding the liability of a municipality for negligence of employees in sprinkling its streets, is

Griffith v. City of Butte, 72 Mont. 552, 234 Pac. 829. There it appeared that an employee of the defendant city, while filling a water wagon used for sprinkling the streets, negligently allowed the truck to roll backward so as to inflict an injury upon a child in the street. The court held that as legislative authority did not in terms provide for sprinkling the streets in aid of public health, and as the law failed to state that sprinkling streets was connected with or had reference to the preservation of public health, it would be inferred that it was connected merely with the maintenance of streets, a corporate and business function of the city, and hence a liability for the injury followed.

Another case, not cited by the plaintiff, McLeod v. City of Duluth, 174 Minn. 184, 218 N. W. 892, reached a similar result as that attained in the Griffith decision, though for different reasons. It presented the situation of a person injured through the negligence of a city employee, who was operating a street flusher. Liability for the injury seems to have been placed on the city primarily because the city charter authorized its council to assess street sprinkling as a local improvement "for public convenience and safety," and that as this was the declared purpose for which sprinkling of streets should be done, the court felt it could not hold it was for the purpose of maintaining health conditions. Yet the court said:

"We take judicial notice of the fact that the primary purpose of sprinkling is to fight dust which may be infested with noxious and pernicious germs; that such dust, put in motion by the many motor vehicles of this age, is constantly being carried about, causing illness, disease, and perhaps death. The germ danger may at times be overworked, but its possibilities are tremendous. Dust even without germs is detrimental to health. Whatever may be said as to the aid or influence of any mode of sprinkling to or upon street maintenance, it must be acknowledged that the ordinary and usual element inciting street sprinkling is health. * * *

"In the absence of an established intention or purpose to the contrary, we hold, as a matter of law, that street 'sprinkling' is done in the interest of the public health."

Additionally, a dissenting opinion in the case very forcibly and briefly remarked:

"Street dust is so much of a menace to public health that I should suppose it a duty of government to control and prevent it so far as possible. Also, clean streets are so necessary in the interest of public health that the process of keeping them clean in my judgment should be considered a governmental function and consequently a municipality held not liable for negligence of an employee while engaged in flushing its streets."

Kaufman v. City of Tallahassee, 84 Fla. 634, 94 So. 697, 30 A. L. R. 471, relied on by the plaintiff, was a case where a city was held liable for injuries negligently inflicted in the operation of one of its fire trucks. This decision was grounded on the adoption by the defendant city of the commission form of government, which, it was held, eliminated any inquiry as to whether the tortious act was performed while the city was acting in a governmental or proprietary capacity and imposed a liability for a tort to the same extent as any quasi public corporation would have to assume where its operations were more in the nature of a business than governmental in character. In connection with this case it may be observed that while the city of Cheyenne is at present operating under a commission form of government, the law authorizing the change provided in part: "All rights, powers and property of every description which were vested in any such city under its former organization, shall vest in the same under the organization herein contemplated, and no right or liability either in favor of or against it, existing at the time, and no suit or prosecution of any kind shall be affected by such change, unless otherwise provided for in this article." The note to the

Kaufman case in 30 A. L. R., supra, suggests that where a change has been made from the conventional form of city government to the commission plan and it is provided, "that all contracts, rights, and liabilities shall remain the same as under the old plan, it would seem that the reasoning upon which the decision in the Kaufman case is based, would be inapplicable, or, at least, have much less force."

It may be noted, also, that in Jones v. City of Phoenix, 29 Ariz. 181, 239 Pac. 1030, expressly disapproving the cases of Fowler v. City of Cleveland, 100 Ohio St. 158, 126 N. E. 72, 9 A. L. R. 131, and Kaufman v. Tallahassee, supra, the court says that they "can only be sustained in logic on the theory that no administrative act is governmental in its nature, which, as we have seen, is contrary to the overwhelming weight of authority." And see City of Akron v. Butler, 108 Ohio St. 122, 140 N. E. 324, where the court said:

"In the instant case, if the delivery of the broom shell was for the use of the street-cleaning department of the city of Akron, it was an incident to street cleaning and was an act governmental in its nature, and the city as a matter of public policy would be exempt from liability for the negligence of its servants."

As decisions in accord with and establishing the weight of authority touching the point under review, against the cases last above given, the following may be referred to for their reasoning and pertinent bearing on the question before us:

In McAllen et al. v. Hamblin, 129 Iowa 329, 105 N. W. 593, it was held that a municipality had power to sprinkle its streets and pay the cost thereof out of its general fund, and no ordinance or resolution authorizing this was necessary when the corporate body was vested with power to improve, care for, supervise and

control the same, and Judge Deemer speaking for the court said:

"Water for street sprinkling is undoubtedly a public purpose within the meaning of the statute referred to, for the benefit is to others aside from those whose property directly abuts upon the street which is sprinkled.

"We are constrained to hold, that under the statutes referred to, towns have authority to pay for the sprinkling of streets. Such work is an improvement of the streets, in that it removes sources of filth, destroys or confines germs of disease, and conduces to the comfort, not only of the traveling public, but to all who may own property in the vicinity of the street. It makes it easier to travel over the highways, and removes many of the discomforts attendant upon the use of dirt roads in dry weather. True the results are transient, and not permanent; but this is true of almost any improvement. None of them are everlasting or eternal."

Kippes v. City of Louisville, 140 Ky. 423, 131 S. W. 184, 30 L. R. A. (N. S.) 1161, was an action for damages brought against the city for injuries alleged to have been caused by the negligence of its employees, at the time engaged in flushing the streets with a hose, which was so defective that it burst. Holding that the city's answer was good as against demurrer, wherein the city responded that the work was being done for the promotion and preservation of the health of the city, and affirming a judgment dismissing the action, the court said:

"And it is generally ruled that service similar in purpose and effect to that the city was performing when the appellant was injured falls within what are called the public or governmental duties of a city. In fact we have expressly held that sprinkling the streets of a city is essential to the health, comfort and safety of its inhabitants as well as the public generally, who use its streets. Putting the service the agents of the city, or one of its departments, were performing at the time plaintiff was injured, upon the ground men-

tioned, the decision of the lower court is supported by a number of opinions delivered by this court as well as the weight of authority in other jurisdictions." (Citing cases.)

To the same effect is the later case from the same jurisdiction of Wyatt v. City of Henderson, 222 Ky. 292, 300 S. W. 921.

It was held in Conelly v. Nashville, 100 Tenn. 262, 46 S. W. 565, that the city was not liable for the negligence of the driver of a street sprinkling cart in colliding with another vehicle so as to overturn it and injure an occupant thereof. Referring to a section of the city charter which empowered the corporate authorities to "make regulations to secure the general health of the inhabitants and to prevent and remove nuisances" (practically identical in terms with the first clause of Sec. 22-1918, sub-division 7th of the Cheyenne Charter, W. R. S. 1931) the court said:

"An ordinance of the city directing the sprinkling of the streets in pursuance of this charter provision, is one that is sanitary in its character, passed in view of the health and comfort of the general public. While engaged in doing work under such an ordinance, the municipality is discharging a governmental duty, and is not responsible for the carelessness of the agent or agencies so employed."

In McCrary v. City of Rome, 29 Ga. App. 384, 115 S. E. 283, it was decided that a city was not responsible for the negligence of an employee who was engaged in sprinkling the streets and operated a sprinkling wagon, with a large yellow tank, in such a way as to frighten plaintiff's horse, with the consequence that the animal ran away and plaintiff was thrown from his vehicle and injured. The cause came up on error to a judgment on a demurrer to plaintiff's pleading, as in the case at bar. It was contended that inasmuch as the petition alleged that the sprinkling wagon was

owned by and operated under the water-works department of the city, and that the latter operated that department for profit and gain, that it was engaged in the performance of mere ministerial functions, and hence liable, but the court said:

"This court will take judicial cognizance of the well-known fact that the dust in the streets of a city is liable to be infested with deleterious germs, and that the winds, or swiftly moving automobiles or street-cars, causes the dust and germs to fly about and settle in the eyes, ears, noses and bronchial tubes of persons passing along the street, thereby producing in them illness and disease. We will also take judicial notice of the equally well-known fact that the sprinkling of streets tends to prevent the dust and germs from flying about and settling upon the persons of pedestrians and others who may be standing upon or passing through the streets. It clearly follows that the sprinkling of the streets of a municipality is conducive to the public health, and that, when done by the city, it is a governmental and not a ministerial function. It is true that the operation of a system of water-works by a city is not essentially a governmental function (Huey v. Atlanta, 8 Ga. App. 597 (1), 10 S. E. 71), but the sprinkling of its streets is not a necessary incident to the maintenance or operation of its water-works system, but on the contrary, is an independent act, performed in connection with the maintenance of the public health, and one which is conducive to the health of all persons residing or visiting in the city, or merely passing through. The fact that the sprinkling was done by the water-works department of the city is immaterial."

The Supreme Court of the United States in Harris v. District of Columbia, 256 U. S. 650, 41 Sup. Ct. 610, 65 L. Ed. 1146, answered in the affirmative a question certified to it by the Court of Appeals of the District, in the following language:

"Is the sprinkling of the streets to keep down dust for the purpose of the comfort and health of the general public, a public or governmental act as contradis-

tinguished from a private or municipal act, which exempts the District of Columbia from liability for the injuries caused by one of its employees engaged therein?"

In the course of the opinion reaching that conclusion the view was expressed:

"But, nothing else appearing, we are of opinion that, when sweeping the streets, a municipality is exercising its discretionary powers to protect public health and comfort and is not performing a special corporate or municipal duty to keep them in repair. This conclusion, we think, accords with common observation, harmonizes with what has been declared heretofore concerning liability of the District of Columbia for torts, and is supported by well-considered cases."

We accordingly feel constrained to announce as flowing from our examination of the law which should govern here the result already intimated, that the judgment under review coincides with the better reasoning and the weight of judicial authority on the point to be decided.

After considerable study of very many decisions relating to what are and what are not governmental functions of a municipality, it would seem to the writer hereof that the courts either divide or compromise between two quite different views of state policy. When they are inclined to look with favor upon the sovereignty idea, i. e., that public rights transcend those of the individual, there is reason for saying that whatever is done for public health, public morals, welfare and safety, through municipal agency, is a sovereign act, and nothing done in its performance can impose liability upon the city; that the legislature cannot rightfully authorize a municipality to do things except such as are proper for a government to exercise; that when it does this, that should be sufficient to earmark it as a governmental function, unless the legislature

passes beyond its own powers or attempts to delegate those it cannot; that as it is true that the sovereign state itself is not liable for negligence, it follows that its agent, the municipality, should be exempt, and that corrective criminal proceedings could be very well employed to restrain municipal negligence.

On the other hand, if the state policy leans toward the idea that the welfare of the individual should not be subordinated to the public, then, as intimated by several courts and writers in legal periodicals, it may properly be said that there should be a right to recover for every injury which the individual receives through the negligence of municipal officers and employees; and that while this rule might be productive of inconvenience, would materially increase taxes and the expense of government and enlarge the field of litigation, these are of small moment when fairness to the citizen alone is considered.

Only the law-making bodies of the several jurisdictions can really and positively settle which policy should be followed. They seem generally not to undertake the task. Until they do the courts must strive as best they can to follow what they deem the sounder reasoning and the consensus of opinion as announced by courts of high repute throughout the nation.

The judgment of the district court of Laramie County will therefore be affirmed.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.