Margaret E. DAVIS, Appellant
(Plaintiff below),

v.

BOARD OF COUNTY COMMISSIONERS OF
the COUNTY OF CARBON, Ap-
pellee (Defendant below),
Olson Enterprises, Inc., and Torginol of
America, Inc., a subsidiary of Torginol
Industries, Inc. (Defendants below).

OLSON ENTERPRISES, INC., and Torginol
of America, Inc., a subsidiary of Torginol
Industries, Inc., Appellants (Defendants be-
low),

v.

BOARD OF COUNTY COMMISSIONERS OF
the COUNTY OF CARBON, Appel-
lee (Defendant below),
Margaret E. Davis (Plaintiff below).

Nos. 4024, 4025.

Supreme Court of Wyoming.

March 21, 1972.

Rehearing Denied April 24, 1972.

McClintock, Mai, Urbigkit & Moriarity, Edward P. Moriarity, Walter C. Urbigkit, Jr., Cheyenne, for appellant Davis.

John A. MacPherson and T. Michael Golden, of Brimmer & MacPherson, Rawlins, for appellants Olson and Torginol.

William S. Bon, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Margaret E. Davis sued Olson Enterprises, Inc., for $75,000, alleging that on January 2, 1970, she was entering a public building, owned by it and rented for public purposes on a long term lease, and that she had fallen because of the slick condition of the front doorway-sidewalk area, negligently built, constructed, created, and maintained by it. She later, after Olson had by motion asserted a lease on the property to the County of Carbon, amended her complaint to include the county as a third-party defendant. Olson answered, setting up plaintiff's negligence and assumption of the risk, and also filed a third-party complaint alleging that it had leased the property to the county, which under the terms of the lease had agreed to indemnify and hold the lessor free and harmless from any and all claims or demands for damage to property or injury to persons as a result of the use and occupation of the demised premises by virtue of which it prayed that plaintiff's complaint against it be dismissed and that if the complaint be found valid against Olson that it have judgment for reimbursement from the county. Still later, upon plaintiff's motion and amended complaint Torginol of America, Inc., the producer of the substance with which the front area had been covered, was brought in as a defendant. After various depositions had been taken defendant county moved for summary judgment and upon hearing the court granted the motion as against the plaintiff, and against Olson and Torginol on their cross-claims, rendering summary judgment for the county and finding there was no just reason for delay. An appeal by the plaintiff as well as by Olson and Torginol has resulted, the question before us being the propriety of the judgment, which in effect held the county not liable.

Plaintiff here argues that the doctrine of governmental immunity is anachronistic, outmoded, and a court-created defense, which is inequitable and should be abrogated by court pronouncement. Additionally she contends that in any event the doctrine is not applicable to the present situation because the county was engaged in a proprietary function; had a statutory duty to keep the building in repair; had waived

any governmental immunity within the limits of the liability insurance it had procured; failed to properly maintain the walk and created a nuisance; and further, the county was liable on the contract with Olson. Olson and Torginol also argue there is no valid reason for recognizing and giving effect to the rule of governmental immunity and further insist the county must be bound to uphold the terms and conditions of the lease agreement.

### Governmental Immunity

The primary argument as to the inapplicability of governmental immunity under the present state of the law in this jurisdiction [1] merits no extended discussion in a situation such as the one before us since we have often addressed ourselves to the problem and see no reason for reviewing our position. One recent statement in Lutheran Hospitals and Homes Society of America v. Yepsen, Wyo., 469 P.2d 409, 410, should suffice:

> "We have had occasion several times lately to say we are aware of the inequities which often arise by reason of the rule of *governmental immunity;* that such inequities tend to be more numerous with increasing governmental activities; but that any change in the rule must be effected by the legislature rather than the courts. [Citing authorities.] * * *"

It may be noted in passing that in the present case at oral argument when queried about the relative duties of the court and the legislature concerning the doctrine counsel responded that an effort had been made at the recent session by those interested to have the legislature change the law to eliminate governmental immunity but had not been successful and hence the courts should undertake the task. We think this circumstance rather than being a cause for us to issue a ukase abrogating the doctrine presents an additional reason why the people in the State, acting through their elected representatives, should be the ones to make the determination. In that connection it may be well to mention that the doctrine in Wyoming *is not* court created. It was adopted by statute (§ 8–17, W.S.1957) as we explained with particularity in Maffei v. Incorporated Town of Kemmerer, 80 Wyo. 33, 338 P.2d 808, 80 Wyo. 61, 340 P.2d 759; and our conclusion there is as applicable now as then, 338 P.2d at 816:

> "We· can agree that a rule of law which is merely the product of judicial decision, born of the necessities of particular circumstance, is subject to judicial repudiation when the reasons which gave rise to its judicial adoption have failed or no longer exist. We do not, however, agree that an ancient doctrine firmly imbedded in that great body of Anglo-Saxon law which we inclusively refer to as the 'Common Law', and which became that law through early usage and custom, can be judicially abrogated any more than courts are authorized to abolish statutory law because in their opinion the reason for the legislative enactment no longer justified the continuance of the law. * * *"

This court cannot properly and will not interest itself in attempting to alter except by essential interpretation matters which have been passed upon by the legislature.[2]

We direct our attention then to the remaining questions presented by the appeals, all of which are peripheral and more or less dependent upon the principal issue just discussed.

### Proprietary Function of County

Turning to the assertion that the leasing and maintenance of the building

---

1. 7 Land and Water L.Rev. 229 (Wyo. 1972) discusses in great depth governmental immunity from damage actions in Wyoming, and a subsequent, presently unprinted, second part of the article continues the discussion.

2. It is to be remembered that our constitution provides: " * * * Suits may be brought against the state in such manner * * * as the legislature may by law direct." Art. 1, § 8, Wyo.Const.

{

}

**24**

constituted a proprietary as distinguished from a governmental function and at least a determination as to the maintenance aspect was a question for the trier of fact, we observe that the Wyoming cases cited are not persuasive,[3] and we are aware of no valid basis for the position. It is difficult to imagine any function which is more truly governmental than the administering of welfare; and no authorities are submitted which would tend to indicate that the procuring of housing facilities by a governmental unit results in transforming its activities into a proprietary function.

### The Fanning Exception

■ Next plaintiff suggests the facts here bring the present litigation within the exception to the general rule recognized by this court in Fanning v. City of Laramie, Wyo., 402 P.2d 460, more specifically that under § 18–149, W.S.1957, the county had a duty to keep in repair buildings used in its activities.[4] Without adverting to the Fanning case in any detail, we find that this argument misapprehends the nature of § 18–149, which recites the powers of the county commissioners and does not refer to obligations or responsibilities. Accordingly, the reason advanced for application of the Fanning exception is untenable in this case.

### Waiver by Taking Liability Insurance

■ Contention that the county by procuring liability insurance waived the defense of governmental immunity to the extent of policy limits is unsupported by authority. We discussed this matter in the Maffei case, supra, and consider that we

resolved the point when we indicated a governmental unit to be immune from liability when exercising its governmental function and unable to waive such immunity by procurement of liability insurance.[5]

### Nuisance

Some reliance seems to be placed on the premise that the county was maintaining a nuisance and accordingly should be held liable; however, the mention of this was without substantiation and little more than peripheral, undeserving of serious consideration.

### Contract of Indemnification

Moving to the argument that the liability of the county is based on contract rather than on tort and hence the rule of governmental immunity is inapplicable, we note that plaintiff relies largely on the views advanced in the brief of Olson and Torginol, which seem to be that the contract provision is binding since the board of county commissioners had the statutory power and authority to enter into a lease agreement with Olson. The portion of the contract on which they rely requires the county to indemnify Olson and hold it free and harmless from any and all claims for injury to persons incurred in connection with the use and occupation of the leased premises by the county, specifically:

" * * * The Lessee does hereby covenant and agree with the Lessor that it will: * * * indemnify and hold the Lessor free and harmless from any and all claims or demands for damage to property or injury to the persons of any patrons, customers, or other persons in-

---

3. Villalpando v. City of Cheyenne, 51 Wyo. 300, 65 P.2d 1109, 156 A.L.R. 684; Opitz v. Town of City of Newcastle, 35 Wyo. 358, 249 P. 799; Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 P. 710, 42 A.L.R. 245.

4. In the Fanning case we held that an exception to the rule of governmental immunity was indicated and justified by certain enumerated statutory enactments and authorized highway regulation and directive made pursuant thereto.

5. In 1961 the legislature authorized cities and towns to carry liability insurance and in 1965 provided that no city or town might plead its governmental immunity in an action involving its liability insurance, thereby indicating its understanding that without a specific provision the procuring of insurance does not constitute a waiver of governmental immunity. This is in accord with the prevailing view in this country. Annotation, 68 A.L.R.2d 1437, 1439.

curred in connection with or as a result of the use and occupation of the demised premises by the Lessee, and to maintain adequate public liability and property damage insurance covering the Lessee's use and occupation of said premises * * *."

 Without immediately centering on the authority of the county to enter such arrangements, we observe that the provision is less than clear in that if interpreted literally it would seem to be a type of *insurance*, covering not only the negligence of the county or its agents but of anyone, including the lessor. Assuming, however, that the provision was intended to hold the lessor harmless from any claims or demands for damage to property or injuries caused by the *county* or its agents, Olson and Torginol are scarcely in a position to prevail here since if the fault were that of the county or its agents Olson and Torginol perforce have no liability while if the negligent acts of either Olson or Torginol were the cause of the injury they would have no occasion to charge the county with responsibility for their own

misconduct. The argument of the appellants therefore falls of its own weight.

 Additionally, appellants are confronted with an insurmountable obstacle in their implicit claim that the indemnity clause gives a right of action where because of governmental immunity none would otherwise exist. It is well settled that indemnification against liability must always be regarded as having reference to existing grounds of liability and not as creating new ones. Becker v. Keokuk Water-Works, 79 Iowa 419, 44 N.W. 694, 695; Van Horn v. City of Des Moines, 63 Iowa 447, 19 N.W. 293, 294. As this court said in Maffei, supra, 338 P.2d at 817, it is beyond the power of a governmental unit to waive an immunity which it possesses by virtue of its being an arm of the state government and any waiver of such an immunity must come by direct action of the legislature or through the clear and unmistakable implication of its legislative acts.

From what has been said, it follows that the trial court was warranted in the summary judgment.

Affirmed.