Bertha M. FANNING, Administratrix of the Estate of Michael John Fanning, Deceased, Appellant (Plaintiff below),

v.

CITY OF LARAMIE, Wyoming, a municipal corporation, Appellee (Defendant below),

and

Glen B. Simpson and Bertha Branch, (Defendants below).

No. 3348.

Supreme Court of Wyoming.

May 18, 1965.

Pence & Millett and Alfred M. Pence, Laramie, for appellant.

John E. Stanfield, of Smith & Stanfield, Thomas S. Smith, Laramie, for appellee.

Before PARKER, C. J., and HARNSBERGER and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

This appeal is from summary judgment rendered in favor of the defendant-City upon its motion supported by affidavits and exhibits, to dismiss plaintiff's amended complaint. However, neither the motion, the affidavits, nor the exhibits challenged or controverted any allegation of plaintiff's amended complaint. They showed only that plaintiff had not taken an appeal from the rejection by the City of her claim for damages as provided by § 15–323, W.S.1957. Under such circumstances, the allegations of fact of plaintiff's amended complaint must be taken as true. A sufficient summary of those allegations are as follows.

The deceased died as the result of injuries sustained in a motor vehicle collision between the vehicle driven by deceased and a vehicle driven by defendant-Simpson, which occurred at a place where a designated through street of the City was intersected by a cross street at which there was erected a stop sign concealed by limbs and foliage of trees planted by either defendant Bertha Branch or prior owners of her property in the area between crosswalks and the traveled portion of the cross street opposite the Bertha Branch property, in violation of city ordinance, and thereby creating a dangerous condition and nuisance at that place, such failure being a proximate cause of the accident.

The amended complaint alleges that by its charter the City was empowered to open, care for, and improve streets, regulate planting of ornamental and shade trees and the use of streets and sidewalks, and that by virtue of this State's motor vehicle code the City was vested with the power to and it had designated the through street, thereby becoming subject to mandatory requirement that it erect signs conforming to statutory and Wyoming State Highway Commission directives.

The grounds upon which defendant based its motion to dismiss were that the amended complaint failed to state a claim against the City upon which relief could be granted because of the City's governmental immunity and that the court lacked jurisdiction of the subject matter because § 15–323 says, "When any claim against the city is disallowed, in whole or in part, the claimant may appeal from the decision of the coun-

cil to the district court of the district in which said city is situated."

One position taken by appellant is that under both statutory and case law of this State, it was the City's duty to erect and properly maintain stop signs at intersections of its through streets; that permitting trees to overhang and conceal such a stop sign was a street defect; and that the City was liable for damage or injury suffered as a result of such defect, by reason of this being an exception to the rule of governmental immunity. Appellant however cautions that her position regarding liability under this exception to the rule should not be confused with cases where municipalities acting entirely upon their statutory prerogatives with respect to traffic control create a dangerous condition solely through the instrumentalities used. By advancing its position respecting the City's liability through an exception to the general rule, appellant seems to concede the City was acting in its governmental capacity in the establishment of the through street and in the erection and maintenance of the stop sign, but rests her claim of liability upon the City's assumed duty to properly maintain the stop sign as being an exception to the general rule of municipal immunity. Appellant insists that by exercising its governmental discretion to designate the through street, the City became subject to the law and traffic code of the State which not only require the erection of adequate stop signs at intersections of through streets, but also impose upon the City the duty to properly maintain such signs and render the City subject to tort liability for its negligent violation of that duty.

Another of appellant's contentions is that concealment of the stop sign by trees' foliage was a nuisance and that independent of the City's liability because of negligence in failing to keep the stop sign visible, it became liable within the broader field of maintaining or permitting a dangerous nuisance.

After quoting from 63 C.J.S. Municipal Corporations § 782, p. 88, where it is said that in most jurisdictions municipal cor-

porations are held liable for injuries resulting from failure to keep streets in a reasonably safe condition or to prevent or abate a nuisance affecting their use and safety, and that in some cases such holdings are based on the theory of corporate or ministerial duty, counsel emphasizes that in other cases, where the duty is held to be governmental, liability arises as an exception to the general rule of immunity.

Appellant also claims that liability attaches regardless of who or what caused the defect or dangerous condition, provided the City has notice of the same. See 63 C.J.S. Municipal Corporations § 795, p. 108. And a dangerous condition made by an abutting owner which exists for a sufficient length of time to have enabled the City to guard the public safety, is enough to render the City liable. 63 C.J.S. Municipal Corporations § 796, p. 110; Osborn v. City of Nashville, 182 Tenn. 197, 185 S.W.2d 510, 514.

■■ In the instant case the question of duration seems unimportant because obstruction by shrubbery does not take place overnight but occurs gradually, a fact which we judicially notice and which in turn must have brought the claimed obstruction to the City's knowledge sufficiently in advance of the accident to have enabled it to cure the defect. Such notice may therefore be implied. Speas v. City of Greensboro, 204 N.C. 239, 167 S.E. 807, 808; 63 C.J.S. Municipal Corporations § 796, p. 110.

In addition to appellant's citations of authorities, it is noted that 38 Am.Jur., Municipal Corporations, § 572, p. 265, points out "The doctrine of immunity from liability for injuries occurring in connection with the exercise of governmental functions is subject to certain exceptions and limitations." This is followed by saying "It [immunity] has frequently been denied application also where damage or injury has been occasioned through the establishment, maintenance, or permission of a nuisance." See also 38 Am. Jur., Municipal Corporations, § 647, pp. 355, 356, et sequens, wherein it is additionally said the liability arises *irrespective* of the

question of negligence, and "liability cannot be avoided on the ground that the municipality was exercising governmental powers." Each of these text statements are amply supported by case authority, the specific citation of which would unduly burden this opinion.

The analytical and forceful argument of counsel in presenting appellant's theories requires more than casual attention. The distinction suggested between cases where the municipality created what proved to be a dangerous traffic condition because of the instrumentalities it adopted in an effort to regulate and control traffic, and the circumstances present in the instant case, seems to have merit inasmuch as in the first instance the action of the municipality amounted to nothing more than error of judgment in the adoption and use of inadequate, faulty, inoperative, or even dangerous methods or devices, while the latter instance involves neglect of the City to maintain in an efficient condition a traffic safety instrumentality which by law and State regulation it was required to provide and maintain. See generally Millar v. Town of Wilson, 222 N.C. 340, 23 S.E.2d 42, 44; Klingenberg v. City of Raleigh, 212 N.C. 549, 194 S.E. 297, 298.

As this court has previously noted, the exemption from liability of municipal corporations has little support in English precedence, and English cases are said to make "unscientific and bothersome distinction between nonfeasance and misfeasance." Ramirez v. City of Cheyenne, 34 Wyo. 67, 74, 241 P. 710, 712, 42 A.L.R. 245. Speaking in criticism of the governmental immunity rule, the court also said:

"A practical objection to the rule is the astonishing lack of uniformity in the decisions of cases in which it has been applied. Powers held to be governmental or public in one jurisdiction are held to be corporate or private in another, and it has often been said that it is impossible to state a rule sufficiently exact to be of much practical value in deciding when a power is public and when private. * * *" 34 Wyo. 76, 241 P. 712.

"In classifying the activity here involved and determining a policy of liability or immunity, we think, in the absence of any generally accepted guide, we should take note of some *exceptions* to the rule of immunity." (Emphasis supplied.) 34 Wyo. 77, 241 P. 713.

"The most pronounced exception is in cases of failure to keep highways in repair. The maintenance of highways would seem to be a governmental or public function and is usually so recognized, *but most of the courts of this country, on one ground or another, have held cities liable for negligence in failing to keep their streets in a safe condition for travel.*" (Emphasis supplied.) 34 Wyo 78, 241 P. 713,

and, "It is often said a city, *even though acting in a governmental capacity, cannot escape liability for creating or maintaining a nuisance.*" (Emphasis supplied.) 34 Wyo. 78, 241 P. 713.

The appellant's position that even though the maintenance of the stop sign in a serviceable condition was a governmental function, its neglect to do so was such an exception to the immunity rule as to leave the City liable as well as appellant's further position that the City's failure after notice to abate the nuisance in the form of the obstructing trees appear to come directly within purview of these pronouncements in Ramirez. This being so, we must either disavow the statements and reasoning of Judge Kimball in Ramirez or we must apply them in this case as being the controlling law in Wyoming.

An examination of the encyclopedic and other texts as well as numerous cases cited thereunder discloses that the views of courts in a number of other jurisdictions are more or less in agreement with those expressed in Ramirez. So we find in 63 C.J.S. Municipal Corporations, § 782, pp. 89, 90, when speaking with respect of municipal duty to keep streets in repair, it is noted that, although the duty is govern-

mental, the liability of the municipality is regarded as an exception to the general rule of nonliability for acts done in the exercise of governmental duties. See Gillies v. City of Minneapolis, D.C.Minn., 66 F.Supp. 467, 468, "It is elementary in this State that a city is not liable for torts arising out of the performance of its governmental functions, except as to negligence in the care of its streets and sidewalks." Smith v. Kansas City, 158 Kan. 213, 146 P.2d 660, 663, " '(except in injuries arising from defects in streets or highways) the municipality is not liable when engaged in performing governmental functions.' " Hagerman v. City of Seattle, 189 Wash. 694, 66 P.2d 1152, 1154, 110 A.L.R. 1110, "the doctrine of immunity does not apply * * * where the right of action is based on the failure of the municipal corporation to use ordinary care in maintaining its streets, sidewalks, and public ways in a reasonably safe condition for travel in the usual modes." City of Louisville v. Pirtle, 297 Ky. 553, 180 S.W.2d 303, 304:

.·"But the same cases, and others, recognize an exception to such immunity in the case of the exercise of governmental functions in maintaining in a reasonably safe condition the city's public streets and ways, * * * and for which it is held liable for any injury produced by its negligence in failing to do so. In that case liability attaches to the municipality notwithstanding its violated duties appertain to the performances of a governmental function. * * *"

Engle v. Mayor and City Council of Cumberland, 180 Md. 465, 25 A.2d 446, 448, " 'There is an exception to the application of the general rule in cases of injuries caused by a· failure of municipal duty to keep highways and streets in safe condition for public travel.' " Wall v. City of Cincinnati, 150 Ohio St. 411, 83 N.E.2d 389, 391, " 'the duty imposed upon municipalities * * * [by code] to keep its streets free from nuisance, is an exception to the rule of common law that no liability attaches to a municipality for negligence in the discharge of a governmental function.' " Neuenschwander v. Washington Suburban Sanitary Commission, 187 Md. 67, 48 A.2d 593; Kamnitzer v. City of New York, 265 App.Div. 636, 40 N.Y.S.2d 139, 141.

▇ It seems obvious that by designating an arterial highway, such as a through street, the City created a new traffic hazard. In the absence of there being a through or arterial street, drivers of vehicles on both of two intersecting streets are governed by §§ 31–118 and 31–119, W.S. 1957, which only require such drivers (a) to yield the right of way to a vehicle which has entered the intersection from a different highway, and (b) when two vehicles enter the intersection from different highways at approximately the same time, to yield to the vehicle on the right. But drivers of vehicles upon streets which intersect through streets are governed by § 31–146, W.S.1957, as amended by Ch. 51, § 1(b), S.L. of Wyoming, 1963, which requires a driver approaching a through street, indicated by stop sign, to stop his vehicle before entering the intersection. In consequence, where there is no through street both drivers are charged with the same exercise of care. Where, however, there is a through street, the vehicle driver thereon has a right to assume the way is clear for his passage through intersections, whereas the driver of a vehicle on the non-through intersecting street is subjected to a new and added peril when entering the intersection unless given warning of the superior right of the driver upon the through street in the use of the intersection.

▇ Decisions in this State which hold that municipalities possess governmental immunity recognize that by statute the rule may be modified or abrogated. Maffei v. Incorporated Town of Kemmerer, 80 Wyo. 33, 44, 338 P.2d 808, 811, rehearing denied 340 P.2d 759. Therefore an examination of pertinent legislation is proper.

The City of Laramie was chartered by §§ 15–667 through 15–705, W.S.1957, and empowered to open and improve its streets

and avenues, control their use, and to prevent and remove all encroachments into or upon them by § 15–686, W.S.1957. Later, and without abandoning its charter, the City qualified as a city manager government. It thus became further empowered, through its city manager, to have supervision and control of its streets and highways. Section 15–337, W.S.1957. Section 15–342, W.S.1957, imposes liability upon all persons who, by unauthorized obstructions, render a street unsafe for travel and in so doing it was provided "no action shall be maintained *against said city for such damages,* unless such persons or person shall be *joined as parties defendant"* (emphasis supplied), and added that any recovery should first be satisfied against the persons or person *rather than against the city,* and giving the city subrogation rights against codefendants. Section 15–343, W.S.1957, requires notice to the city manager within 30 days of an injury and says that *action against the city for injury caused by street defect* be commenced within one year from its happening. Chapter 100, § 2(10), S.L. of Wyoming, 1963 (§ 15–4.2(10), W.S.1957, 1963 Cum.Supp.), also gave the City power to care for streets and to regulate planting of ornamental and shade trees in and to regulate the use of streets.

■ These statutory provisions, taken collectively as they should be, in the light of Opitz v. Town of City of Newcastle, 35 Wyo. 358, 249 P. 799, and Wilson v. City of Laramie, 65 Wyo. 234, 199 P.2d 119, give legislative recognition that irrespective of a city having acted in its governmental capacity it is now without immunity in a matter such as the one before us.

Furthermore, § 31–146, W.S.1957, as amended by Ch. 51, § 1, S.L. of Wyoming, 1963, empowered the City to designate through highways and erect stop signs at specified entrances thereto or designate any intersection a stop intersection. Section 31–12(10), W.S.1957, as amended by Ch. 65, § 1, S.L. of Wyoming, 1963, says public highways include public streets in cities.

Section 31–86(a) (6), W.S.1957, also leaves cities with restricted right to designate through highways, to require all vehicles to stop before entering or crossing the same, and to require all vehicles to stop at entrances to intersections, although § 31–86(c), W.S.1957, requires that signs be posted at the entrance to the highway giving notice of such traffic regulation before it becomes effective. Inasmuch as there is no dispute but that the stop sign had been erected, there has been compliance with § 31–86(c).

Section 31–85, W.S.1957, made the Act applicable to cities and gave local authorities, which term as defined by § 31–78(g) (2), W.S.1957, includes municipal bodies having authority to enact traffic laws, the express right to enforce adopted traffic regulations.

Section 31–137, W.S.1957, required the City to place and maintain such traffic control devices upon highways under its jurisdiction as it deemed necessary to regulate, warn, or guide traffic, such devices however to conform to the State manual and specifications. The City elected to erect a stop sign at the subject intersection.

■ Section 31–89, W.S.1957, amended by Ch. 21, § 1, S.L. of Wyoming, 1963, required the State Highway Commission to adopt a manual and specifications for a uniform system of traffic control devices for use upon highways within this State which would correlate and conform so far as possible to the system set forth in the most recent edition of the "Manual on Uniform Traffic Control Devices for Streets and Highways." The applicable manual adopted by the State is the "Manual on Uniform Traffic Control Devices for Streets and Highways" (D6.1–1961 edition). The unchallenged allegations of the amended complaint set forth that such manual was adopted. Its provisions therefore are properly before us for consideration in this case. In Logan v. Pacific Intermountain Express Company, Wyo., 400 P. 2d 488, it was pointed out that where federal law regulated interstate commerce

upon highways of this State such regulation was as much the law of this jurisdiction as regulations prescribed by our own legislature. Where, as it is true in this matter, our officials were required by law to adopt a manual and specifications for a uniform system of traffic control devices for use upon highways within this State which correlate and conform so far as possible to the system set forth in the "Manual on Uniform Traffic Control Devices for Streets and Highways," and the unchallenged allegations of plaintiff's amended complaint say the highway commission has adopted the June 1, 1961 edition of such manual, for the purposes of this case the regulations contained in the adopted manual became the law of this State just as much as any other regulation authorized by the legislature. In the introduction of this manual, at page 2, where traffic control devices are discussed, appears the statement, "Placement of the device must assure that it is within the cone of vision of the normal user so that it will command attention." Also at pp. 2–3, "Maintenance of devices must be to high standards to assure that legibility is retained, *that the device is visible,* and that it is removed if no longer needed." (Emphasis supplied.) Further, at page 31, "In the event the visibility of a Stop sign * * * at any location is restricted, the sign shall be located as specified, *and a Stop Ahead* sign * * * shall be erected in advance of the Stop * * * sign"; at page 24, "Special care should be taken to see that weeds, shrubbery, construction materials, and snow are not allowed to obscure the face of any sign"; and at page 267, "Signs must always be placed in position where they will convey their messages most effectively without restricting lateral clearance or sight distance."

 The City having elected to establish the through street and having erected the required stop sign was obligated to maintain its visibility and to exercise special care that shrubbery, i. e., trees, was not allowed to obscure the sign and prevent it

from conveying its message effectively. This principle of municipal liability was accepted in Phinney v. City of Seattle, 34 Wash.2d 330, 208 P.2d 879, 881, the court saying:

> "We are of the opinion that the legislature intended * * * to authorize counties and cities * * * to determine and designate which roads and streets should be arterial highways, and whenever such action was taken to require such counties and cities * * * to erect and maintain stop signs; also that the legislature intended that if the counties or cities failed to comply with its mandate they would be liable in damages to users of the highways injured by such default. * * *"

Bradshaw v. City of Seattle, 43 Wash.2d 766, 264 P.2d 265, 42 A.L.R.2d 800, reached a different conclusion but distinguished its decision from Phinney because the law in the State of Washington had been changed so as to make the erection of the sign discretionary rather than mandatory. As it is the law of our State that the erection and maintenance of the stop sign is mandatory whenever a through street has been established and designated, the pronouncements of Phinney are applicable, whereas those of Bradshaw are not.

Murphy v. De Revere, 279 App.Div. 929, 111 N.Y.S.2d 2, affirmed 304 N.Y. 589, 110 N.E.2d 740, expressly held that where the village, pursuant to statutory authority, ordained a main artery of travel and imposed the duty to erect a stop sign at an intersection, a failure to properly maintain the sign gave rights to tort liability, citing Nuss v. State of New York, 301 N.Y. 768, 95 N.E. 2d 822; Foley v. State, 294 N.Y. 275, 62 N.E.2d 69.

After California had adopted the Uniform Motor Vehicle Code in which a "through highway" is defined the same as it is in the Wyoming Code, § 31–78, W.S. 1957, it was said in Irvin v. Padelford, 127 Cal.App.2d 135, 273 P.2d 539, 544, "Having declared Second Street to be a through highway defendant city was under an ob-

ligation to comply with the Motor Vehicle Code by providing stop signs or other appropriate signals at each intersection with Second Street," and the court held the removal of the sign was a proximate cause of an accident and affirmed judgment against the City.

Cases cited by appellee are not in parallel with the instant case because the traffic signals involved were not required by statute to be installed or maintained.

In its brief appellee acknowledges there are exceptions to the general rule of governmental immunity but relies upon such exceptions occurring only because of special state statutes. As we find there are such special state statutes affecting this case, appellee's theory and the cases cited in its support are not helpful or applicable.

The critical question then lies in whether an imperative duty was placed upon the City to erect and adequately maintain a sufficient stop sign at the accident intersection. See 38 Am.Jur., Municipal Corporations, §§ 579, 580, pp. 273–276; Weightman v. Corporation of Washington, 1 Black 39, 66 U.S. 39, 17 L.Ed. 52.

We find that such imperative municipal duty has been legislatively ordained and the City's usual governmental immunity has been impliedly waived by that arm of our State government which has the legal right to do so.

The rule of governmental immunity upheld in Maffei v. Incorporated Town of Kemmerer, 80 Wyo. 33, 338 P.2d 808, rehearing denied 340 P.2d 759; and in Chavez v. City of Laramie, Wyo., 389 P.2d 23, is still the law in this State to which we continue to adhere, but this does not require that we fail to recognize an exception to the rule of governmental immunity which is indicated and justified by statutory enactments and authorized highway regulation and directive made pursuant thereto.

The further grounds upon which appellee asks the judgment be upheld is that an appeal to the district court from the rejection of plaintiff's claim was the proper method required under the provisions of § 15–323, W.S.1957, rather than by plaintiff's instituting an independent original action against the City in the district court. If the statute's provision for appeal is exclusive, a failure to pursue it would give substance to this contention of appellee. However, if the statutory appeal merely provides a cumulative remedy, appellee's position is not well taken.

The matter has not been directly passed upon by this court.

Although appellee offers no authority to support its claimed lack of the court's jurisdiction for the reason that no appeal was taken from the City's rejection of plaintiff's claim, and we find no Wyoming case where a court's jurisdiction has been challenged because of failure to take the statutory appeal from rejection by a city of a claim properly presented to it, the law of Wyoming respecting the identical question has long been settled when a claim against a county has been rejected and direct action was instituted in the district court for the recovery of the amount sought. Boswell v. Board of County Commissioners, 1 Wyo. 235, 239:

"* * * it is apparent that the statute referred to only provides a remedy for those whose claims have been disallowed by a board of county commissioners, which may be a more expeditious and less expensive method of procedure than the ordinary mode of procedure, but in no wise prevents a claimant from pursuing the usual course for collecting claims, if he shall deem the same to be the best."

Van Buskirk v. Red Buttes Land & Live Stock Co., 24 Wyo. 183, 202, 156 P. 1122, 1127, rehearing denied 160 P. 387:

"* * * It was early held in this state that the statutory provision allowing an appeal from the disallowance of a claim by a board of county commissioners did not prevent a claimant, after such disallowance, from bringing an ordinary action to recover the same,

instead of appealing from the decision of the board. * * *"

State ex rel. Robertson Inv. Co. v. Patterson, 47 Wyo. 416, 431, 38 P.2d 617, 620, 98 A.L.R. 428:

"When a claim against a county is disallowed, the claimant may appeal to the district court. Sections 30–611, 30–612 [R.S.1931, now §§ 18–157, 18–158, W.S.1957]. But the decision of the county commissioners rejecting a claim is not treated as an adjudication which, if not appealed from, becomes binding on the parties. The claimant by failing to appeal does not lose his right, but may sue on his claim. * * *"

These decisions are in line with those from other states. For instance, in Board of County Com'rs of Atoka County v. Cypert, 65 Okl. 168, 166 P. 195, 199:

"* * * Hence the authorizing of an appeal from the action of the board is merely a statutory method afforded the claimant, which, if pursued, will give the district court jurisdiction of the county—bring the county or its authorized agents into court, so that there may be a judicial ascertainment of the rights of the parties. It does not follow, however, that such method of acquiring jurisdiction of the county is exclusive, or that the statute permitting such procedure does away with the ordinary method of beginning an action by filing petition and causing summons to be issued."

We feel there is no sound reason why the law should be different respecting the right of a claimant whose voucher to the City has been rejected to institute direct action for the recovery of the amount claimed, rather than proceeding under the statute by appeal to the district court, than the law established by judicial decision which authorizes a claimant against a county, whose voucher has been rejected, to proceed by direct action in the district court for the recovery of the claim.

The summary judgment entered below was erroneous because by the plaintiff's amended complaint a cause of action was pleaded upon which relief might be obtained, provided, of course, its allegations can be substantiated.

We do not overlook appellant's nuisance theory but find it unnecessary to discuss in view of the conclusions reached.

The summary judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Mr. Justice GRAY not participating.

Mr. Justice McINTYRE (dissenting).

As indicated in the opinion written by Justice Harnsberger, appellant-administratrix seems to concede the City of Laramie was acting in its governmental capacity in the establishment of Third Street as a through street and in the erection of the stop sign in question. Appellant contends the City should be held liable, if her allegations of negligence are proved, on the theory of an exception to the general rule of municipal immunity.

Thus, we face squarely the proposition of whether we are prepared, by judicial interpretation, to take the first step toward the elimination of governmental immunity. In order to hold with appellant, we must necessarily engraft an exception onto the constitutional grant of immunity for branches of state government. I recognize that such a step has recently been taken by courts in other jurisdictions.

I personally feel, however, that we should not do by judicial edict what is clearly a legislative function. The constitution authorizes suits against the state in such manner and in such courts as the legislature may by law direct. Article 1, § 8, Wyoming Constitution. Therefore, I agree with my colleagues that the rule of governmental immunity may be modified or abrogated by statute. I do not agree, however, that the statutes referred to clearly authorize a suit against a city for defective traffic devices.

Section 15–342, W.S.1957, has to do only with excavations in or obstructions on a street. Section 15–343, W.S.1957, provides for a notice before any action may be maintained against a city, but it does not expressly authorize suit in such a case as we have before us. Also, Ch. 100, § 2(10), S.L. of Wyoming 1961 (§ 15–4.2(10), W.S. 1963 Cum.Supp.), has to do with the power of the city to create and regulate streets.

It contains no language which can be construed as directing or authorizing suits in connection with these functions.

It may very well be that the rule of governmental immunity has outlived its usefulness in these days when insurance companies are willing to insure against all sorts of liabilities. But in my opinion we would do well to leave the matter with the legislature where it properly belongs.